IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CARL RAY LYALL and | ) | CHAPTER 13 |
| RITA GALE LYALL, | ) | |
| | ) | |
| Debtors. | ) | CASE NO. 11-70535 |

| | | |
|---|---|---|
| CARL RAY LYALL and | ) | |
| RITA GALE LYALL, | ) | |
| | ) | |
| Debtors | ) | |
| | ) | Debtors' Motion to Avoid Nonpossessory, |
| v. | ) | Nonpurchase-Money Security Interest |
| | ) | |
| TRUPOINT BANK, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Debtors' Second Amended Chapter 13 Plan, a related Motion to Avoid Nonpossessory, Nonpurchase-Money Security Interest (the "Motion to Avoid"), and the Limited Objections of TruPoint Bank to the Debtors' Second Amended Chapter 13 Plan and Related Motions (the "Objection"), opposing the Motion to Avoid on the ground that the related lien avoidance motion is not permitted under applicable law.[1] The Debtors attempt to avoid one of TruPoint Bank's ("TruPoint") liens on the basis that it impairs an exemption which they now claim but did not claim at the time of filing their initial petition or at

---

[1] The confirmation hearing on the Amended Plan took place on July 10, 2012. The Motion to Avoid, although initially set for hearing on July 31, seeks the same relief as the motion incorporated into the Amended Plan. At the request of the parties, the Court heard the issue posed by both the Amended Plan and the Motion to Avoid at the confirmation hearing.

any time prior to the confirmation of their First Amended Plan. Whether they may do that now is the issue ruled upon here.

## FINDINGS OF FACT

Mr. Lyall is a welder and has been self-employed for nine years. This job requires heavy equipment that Mr. Lyall must transport to and from welding projects. Mrs. Lyall is employed as a substitute teacher for Dickenson County schools. At the time of the filing of their petition, the Debtors had a combined monthly income of $5,950. *See* Schedule I.

On June 25, 2010, the Debtors obtained a loan ("the Loan") of $106,753.09 from TruPoint and entered into a Security Agreement ("the Security Agreement") with TruPoint. *See* Ex. A to Motion to Avoid. The loan is secured by various items of the Debtors' personal and real property: a first deed of trust on a one-half acre of land located in Coeburn, Virginia together with a first security interest lien on their mobile home situated on that property (collectively, the Debtors' residence), and first security interest liens on a 2007 Dodge, a 2000 Dodge, and the 2004 Chevrolet 3500 truck ("2004 truck") at issue here. According to the Security Agreement, the property securing the loan is to be used for "[p]ersonal purposes" and kept "in good repair and use[d] . . . only for its intended purposes." *Id.* The deed of trust lien was properly recorded in the Clerk's Office of the Circuit Court of the County of Dickenson on June 25, 2010. *See* Ex. 1-B to Movant's Certification Required with Respect to TruPoint's Motion for Relief from Stay ("TruPoint's Certification") and p. 11 of Claim No. 3. TruPoint's liens are also noted on the certificates of title for the mobile home, the 2000 Dodge, the 2007 Dodge, and the 2004 truck.[2] *See* Ex. 1-D to TruPoint's Certification and Claim No. 3 pp. 12–15.

---

[2] TruPoint Bank appears to be the successor to Miners & Merchants Bank, which is the secured party listed on the certificate of title to the 2004 truck.

Both Debtors are named as owners of the 2000 Dodge and 2004 truck on their respective certificates of title. Only Mr. Lyall's name appears on the certificate of title to the 2007 Dodge.

As listed on Schedule A, the Debtors' residence in Coeburn is valued at $59,200. According to Schedule B, the 2007 Dodge, the 2000 Dodge, and the 2004 truck are valued at $18,950, $3,360, and $6,075, respectively. The Debtors did not claim any exemption for the 2004 truck on Schedule C as originally filed, but did claim an exemption under VA. CODE ANN. § 34-26(8)[3] for the Debtors' 2007 Chevrolet Tahoe, a fourth vehicle that does not secure the TruPoint loan. *See* Debtors' Schedule C.

TruPoint filed a proof of claim with the Court on March 24, 2011. *See* Claim No. 3. According to the claim, the Loan had a wholly-secured outstanding balance of $105,058.83, exclusive of interest or other charges, on the petition filing date. The claim did not provide individual valuations of the Loan's collateral, but TruPoint's Certification regarding its relief from stay motion lists the "Blackbook" value of the 2004 truck as $15,375. *See* TruPoint's Certification and Exhibit 2-B. The Debtors have not objected to TruPoint's proof of claim.

On August 26, 2011 the Debtors filed their First Amended Chapter 13 plan ("the First Amended Plan"), which was confirmed by this Court's order entered on December 8, 2011 and remains in effect. Under this plan, the Debtors continue to make their regular loan payment of $1,200 to TruPoint. The Trustee is to cure the estimated arrearage of $4,800 on that debt at 7.75% interest. The plan provision concerning the $1,200 payment to TruPoint only specifically

---

[3] "In addition to the exemptions provided in Chapter 2, every householder shall be entitled to hold exempt from creditor process . . . [a] motor vehicle, not held as exempt under subdivision 7 [regarding "tools of the trade" exemptions], owned by the householder, not to exceed $6,000 in value, except that a perfected security interest on the motor vehicle shall have priority over the claim of exemption under this subdivision." VA. CODE ANN. § 34-26(8) (2012).

3

mentions the house and lot as collateral and does not reference TruPoint's other collateral. *See* Debtors' First Amended Chapter 13 Plan and Order Confirming Plan.

On May 31, 2012, the Debtors filed the Second Amended Plan and amended Schedules I and J. The Second Amended Plan proposes several modifications to the Loan. Under this plan, the Debtors propose to surrender the 2007 Dodge to TruPoint, sell the 2000 Dodge and give all proceeds to TruPoint, restructure the loan to TruPoint to make payments of $308.00 per month (reduced from $1,200 per month) with a balloon payment due on March 1, 2016, and avoid TruPoint's lien on the 2004 truck as it impairs the male Debtor's right to claim a "tool of the trade" exemption in the amount of $6,075 (the value of the truck according to the Debtors' valuation).[4] Despite the last-mentioned exemption claim, the Debtors had never asserted such claim in Schedule C to their petition and did not file an amended Schedule C at the time of filing either the Second Amended Plan or the Motion to Avoid.

The amended schedules filed with the Second Amended Plan reveal a drastic reduction of income and expenses. *See* Amended Schedule I and Amended Schedule J. Amended Schedule I shows that Mr. Lyall's gross monthly wages have decreased by $4,600, from $5,600 to $1,000, and that Mrs. Lyall's gross monthly wages have increased by $850, from $350 to $1,500, for a net reduction in total monthly income of $3,750. According to the amended Schedule J, the Debtors have reduced their monthly expenses by $1,980 for a monthly net income of $155. This reduction was achieved largely by reducing the monthly mortgage

---

[4] In an Agreed Order entered on July 24, 2012, the Court granted TruPoint's Motion for Relief from Stay, permitting TruPoint to enforce its liens on the 2000 Dodge and the 2007 Dodge according to the terms of the Security Agreement.

4

payment from $1,200 to $310, and partly by reducing the cable/internet and automobile insurance payments, as well as by eliminating health insurance payments.

According to the Motion to Avoid, filed on June 28, 2012, Mr. Lyall uses the 2004 truck for his job as a welder and therefore is entitled to a "tools of the trade" exemption under VA. CODE ANN. § 34-26(7), which limits the value which can be exempted to $10,000. Such motion also states that TruPoint has a nonpossessory, nonpurchase-money security interest in the vehicle under the June 25, 2010 Security Agreement and that this security interest impairs Mr. Lyall's right to claim the exemption. TruPoint has filed responses opposing the Debtors' efforts in this regard which are set forth in detail in the Conclusions of Law portion of this decision.

Pursuant to Fed.R.Bankr.P. 1009, the Debtors filed an amended Schedule C on July 11, 2012. The Debtors did not claim any "tools of the trade" exemptions under VA. CODE ANN. § 34-26(7) on the original Schedule C, but the amended Schedule C includes three: $4,160 for "1 Miller Trailblazer Welder, 1 Miller Bobcat Welder, 1 Boring Machine, 1 4 ½ Grinder, 1 7 ½ Grinder, 1 Miller Wire Welder, Various Hand Tools"; $8,700 for "Miller Welder, Boring Machine, Misc Grinders, Handtools"; and the $6,075 exemption for the 2004 truck at issue here. The welding equipment listed in the amended Schedule C does not appear on the Debtors' original Schedule B, even though there is a section for "Machinery, fixtures, equipment and supplies used in business." From the amended Schedule C descriptions, there appears to be some area of overlap between the equipment on which the $8,700 exemption is taken and the equipment on which the $4,160 exemption is claimed, but its extent is not clear. Accordingly,

the total value of the property which the Debtors seek to claim as exempt as tools of Mr. Lyall's trade under § 34-26(7) is uncertain.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  Matters involving confirmation of plans, disputed claims by debtors to exempt property, and motions or other proceedings seeking the avoidance of liens upon property of bankruptcy debtors are "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(L), (B) and (K), respectively.  This Court concludes that it has constitutional authority to rule on the matters at issue here under the rationale of the Supreme Court's 2011 decision in *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011).

The effort by the Debtors in this case to claim an exemption which they never claimed until after the time of filing their post-confirmation Second Amended Plan on May 31, 2012 raises significant questions about when bankruptcy debtors can revisit in a subsequent Chapter 13 plan issues and treatment of secured creditors' claims which were provided for in a prior confirmed plan because "[t]he provisions of a confirmed plan bind the debtor and each creditor[.]"  11 U.S.C. § 1327(a).  Nevertheless, the Bankruptcy Code does permit the modification of confirmed Chapter 13 plans after confirmation "but before the completion of payments under such plan . . . to – (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan[.]"  11 U.S.C. § 1329(a)(1).  There is Circuit Court authority, *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000), to the effect

that this section "does not permit a debtor to surrender collateral to a secured creditor and modify the plan to reduce cash payments to that creditor."[5]  8 *Collier on Bankruptcy* ¶

---

[5] This Court reached a somewhat similar result in an unpublished decision in the case of *In re Spradlin*, No. 7-98-02835-WSR-13 (Bankr. W.D. Va. May 11, 2000), in which the Court declined to confirm a modified plan which proposed to surrender a vehicle with a "blown motor" to the secured creditor with that creditor being left with the remedy of repossessing the disabled vehicle, selling it, and then filing an unsecured claim for the deficiency.  The Court supported its decision with the following rationale:

> Whether out of a desire to keep the vehicle without dispute at the time of filing his petition or out of a desire to accommodate and not disturb the affected creditor at that time, the Debtor proposed and obtained confirmation of a Plan which treated the creditor as secured to the value of $3,200 and proposed to pay the creditor such value with interest at the contract rate in payments of $200 each month.  Now that both the condition of the vehicle has materially deteriorated and the Debtor's desires have changed, the Debtor desires to relinquish the vehicle to the creditor, which could then sell it and file a claim for a deficiency as a general unsecured creditor.  The proposed modified Plan would provide no full recompense for the reduction in value which the secured creditor has suffered during the interim but would treat such reduction as it would be the claim of any unsecured creditor.  The Court believes that the secured creditor should not bear the risk of loss of value in the collateral when the debtor originally chooses to keep the property in question but then later during the course of the Plan chooses to give it up.  It is the debtor who has chosen to keep the vehicle rather than surrendering it at the beginning.  Accordingly, the risk of collateral impairment should fall upon that debtor.  The Court further believes that under teaching of *Grundy Nat. Bank v. Rife, supra*, [876 F.2d 361 (4th Cir. 1989)]  the secured creditor, which has been deprived of its contract rights to repossess and sell the vehicle at the beginning of the case in exchange for the debtor's promise to pay the then value of such vehicle with interest, must be dealt with fairly and equitably when the debtor later decides not to fulfill the terms of the "bargain" created by the pertinent provisions of the confirmed Chapter 13 Plan.  While the Court recognizes that a debtor must be free to surrender assets constituting a secured creditor's collateral even after confirmation of a Plan when such is necessary to assure his or her ability to fulfill the provisions of a Plan as necessarily modified, in doing so the debtor must prepare a modified Plan which treats the loss suffered by the secured creditor in a fair and equitable manner.  One method of doing

7

1329.04[3] at p. 1329-9 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). *Collier*, however, criticizes this result and states that other decisions to the contrary[6] demonstrate "a more careful and complete reading of the Code." *Id.*

The United States Fourth Circuit Court of Appeals has made clear that modifying a confirmed Chapter 13 Plan is not be to taken lightly. The guiding principle in any such proposed modification is set forth in that Court's decision in the case of *In re Murphy*, 474 F.3d 143 (4th Cir. 2007), as follows:

> Simply stated, per *In re Arnold*,[7] when a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition. This inquiry will inform the bankruptcy court on the question of whether the doctrine of *res judicata* prevents modification of the confirmed plan. If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of *res judicata* will prevent the

---

so would be to surrender the vehicle but treat the difference between the vehicle's current value and the value in the confirmed Plan, less the principal portion of any payments made to the creditor under the provisions of the confirmed Plan, as an administrative claim against the estate. To maintain the treatment accorded to the unsecured creditors under the confirmed Plan might require an extension of the Plan's term or an increase in its remaining payments or both. When the debtor doesn't have the ability to propose a modified Plan which both treats the secured creditor fairly and equitably while maintaining the treatment of the unsecured creditors provided for in the original Plan, a modification of the latter's rights can certainly be approved by the Court after appropriate notice to the affected creditors and a hearing to allow them to protect their interests before the Court.

[6] *Collier* cites *Bank One, NA v. Leuellen* (*In re Leuellen*), 322 B.R. 648 (S.D. Ind. 2005); *In re Knappen*, 281 B.R. 714 (Bankr. D.N.M. 2002); *In re Townley*, 256 B.R. 697 (Bankr. D. N.J. 2000); *Day v. Systems & Servs. Techs., Inc.* (*In re Day*), 247 B.R. 898 (Bankr. M.D. Ga. 2000); and *In re Zieder*, 263 B.R. 114 (Bankr. D. Ariz. 2011).

[7] 869 F.2d 240 (4th Cir. 1989).

>   modification of the confirmed plan. However, if the debtor experienced both a substantial and unanticipated change in his post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a). If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1).

474 F.3d at 150. The Court concludes that the reduction in total income suffered by the Debtors subsequent to confirmation of their First Amended Plan which is detailed in the Findings of Fact section of this decision was material and significant enough to constitute "a substantial and unanticipated change in [their] post-confirmation financial condition" within the teaching of *Arnold* and *Murphy*, thereby providing cause for the filing of a post-confirmation modified plan.

Although the Debtors' Second Amended Plan does involve in part surrender of some collateral to TruPoint, the precise issue dealt with in this decision is the Debtors' effort to avoid the bank's lien against one vehicle which they now claim to be a "tool" of Mr. Lyall's trade within the meaning of Va. Code § 34-26(7).[8] In its Objection, TruPoint argues that the Motion to Avoid is not supported by either the facts of the case or the applicable law. TruPoint claims that, at the least, the Debtors must obtain leave to amend Schedule C[9] to reflect this exemption, and that the Debtors offer "no proof whatsoever" that the 2004 truck qualifies as a

---

[8] "In addition to the exemptions provided in Chapter 2, every householder shall be entitled to hold exempt from creditor process . . . [t]ools, books, instruments, implements, equipment, and machines, including motor vehicles, vessels, and aircraft, which are necessary for use in the course of the householder's occupation or trade not exceeding $10,000 in value, except that a perfected security interest on such personal property shall have priority over the claim of exemption under this section." VA. CODE ANN. § 34-26(7) (2012).

[9] Counsel for the Debtors conceded at the hearing that an amended Schedule C, which he had thought had already been filed, would need to be filed and such was done on July 11, 2012.

"tool of the trade."[10]  Even if the 2004 truck qualified, TruPoint argues, the Debtors had to have claimed the exemption when the initial petition and schedules were filed.  TruPoint cites *In re Weinstein*[11] and *In re Cordova*[12] to support this argument.  TruPoint believes that "this 'after the fact' exemption gerrymandering" is only done to diminish its secured claim.  TruPoint requests that the Debtors' Motion to Avoid be denied and that either the Court determine the appropriate adequate protection payment or lift the stay so that TruPoint can proceed against the Debtors under state law.

Following the July 10, 2012 evidentiary hearing, TruPoint filed its Response to the Debtors' Motion to Avoid ("the Response") on July 17, 2012.  In the Response, TruPoint distinguishes *In re Nuckolls*,[13] a case relied upon by the Debtors at the evidentiary hearing.  TruPoint argues that because the creditor in *Nuckolls* failed to properly perfect its lien, and because the debtor had signed an express waiver of the right to claim a homestead exemption, *Nuckolls* concerns different facts and issues of law.  *See* Response of TruPoint Bank to Debtor's [sic] Mot. to Avoid Nonpossessory, Nonpurchase Money Security Interest.

TruPoint's assertion that a bankruptcy debtor's claim to exempt property is determined as of the filing date, as held in the *Cordova* and *Weinstein* decisions it cites, is correct.  At the July 10th hearing, however, the Debtors did offer testimony of Mr. Lyall that the truck was necessary for the conduct of his trade at the time the petition was filed and that such

---

[10] The Debtors did offer evidence to this effect at the July 10, 2012 hearing.

[11] 192 B.R. 133 (Bankr. E.D. Va. 1995).

[12] 394 B.R. 389 (Bankr. E.D. Va. 2008).

[13] *Dominion Bank of Cumberlands v. Nuckolls (In re Nuckolls)*, 780 F.2d 408 (4th Cir. 1985).

10

remained true as of the time of the hearing. He apparently has operated under a trade name as a corporation and at the time the bankruptcy petition was filed he operated as an independent contractor to one company on a full time basis. That contractual arrangement, which apparently had existed for a number of years, unfortunately was terminated by that company subsequent to the filing. Prior to the time of the hearing, however, he had been able to establish a similar arrangement with a different company. At all times, however, the use of the truck and the equipment affixed to it remained the same and, according to Mr. Lyall's undisputed testimony, necessary for the conduct of his trade.

There appears to be a real paucity of case authority addressing the specific factual situation presented here of a post-confirmation claim of an exemption in property of the estate never previously asserted in the case. Neither party has cited such a decision and the Court's own research has revealed only one, *In re Walker*, 153 B.R. 565 (Bankr. D. Or. 1993). The Oregon bankruptcy court rejected a mortgagee's contention that a debtor's failure to claim her residence as exempt in her original schedules precluded her attempt to do so post-confirmation. Its rationale was that a chapter 13 debtor "does not claim exemptions" but rather "lists property he would claim exempt if the case were filed under chapter 7." Accordingly, "the chapter 13 schedules . . . are merely informative and do not constitute a judicial admission . . . ." 153 B.R. at 569. In the absence of other case authority, the Court and the parties are left with the language of Bankruptcy Rule 1009(a) providing that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Counsel for TruPoint has been unable to establish on what basis this general right to amend is not applicable to Schedule C, even one filed post-confirmation but "before the case is closed."

11

If, however, contrary to TruPoint's contention, there is a general right to amend even a claim of exemption in Schedule C, such a right might be forfeited if attempted to be exercised in bad faith or unfairly to the secured creditor.  In this case, the Debtors originally proposed to pay TruPoint in full and in accordance with the terms of their loan obligation except that the pre-petition arrearage upon such obligation would be cured by the Chapter 13 Trustee under the terms of the First Amended Plan.  Certainly there was no prejudice to TruPoint in this arrangement.  The changes made in their Second Amended Plan are not the result of a change in heart on the Debtors' part or as the result of some casualty loss to the collateral, but rather the result of a major change in their financial condition which precluded their fulfillment of the confirmed First Amended Plan.  Because up until recently during this case the bank has been receiving its contractual payment, it must be presumed, especially in light of TruPoint's failure to object to confirmation of the earlier Plan, that such payments were sufficient to provide adequate protection to such creditor against decline in value of the collateral during such time.  TruPoint has not articulated how it would or might have been better off if the Debtors had asserted a "tool of the trade" exemption originally as compared with their doing so now.  After reflection the Court has been unable to discern that the Debtors have somehow gained some advantage over TruPoint by delaying making their exemption claim or that the latter has been prejudiced by the timing of that claim.  Naturally, if the comparison is between making the claim and not making it at all, TruPoint is prejudiced, but the critical question seems to be prejudice resulting from the timing of making the claim.  It is acknowledged that both the facts upon which the claim of exemption rests and the value of the property claimed as exempt must be determined as of the date of filing, not some subsequent date.  Accordingly, the Court concludes that the

Debtors have not been shown to have engaged in any nefarious conduct which would estop them from amending their Schedule C post-confirmation.

The Court further concludes, however, that the Debtors are limited to an aggregate claim in the amount of $10,000 for property claimed as exempt as "tools of the trade" pursuant to § 34-26(7) of the Virginia Code.  Because they have claimed as exempt more than $10,000 worth of "tools", their claim of exemption in the 2004 Chevrolet truck must be limited to the $10,000 exemption ceiling reduced by the aggregate value of other property claimed as exempt pursuant to § 34-26(7) in their amended Schedule C.

An Order in accordance with the above decision will be entered contemporaneously herewith.

This 9th day of August, 2012.

*William F. Stone, Jr.*
UNITED STATES BANKRUPTCY JUDGE